1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10    SAEID SEDDEGH KIYAROUDI,              CASE NO. C25-0091JLR

11                        Plaintiff,         ORDER

12              v.

13    MARCO RUBIO, et al.,[1]

14                        Defendants.

15              I.    INTRODUCTION

16         Before the court is Defendants Marco Rubio, Kristi Noem, Julie M. Stufft, and

17    Melissa Sweeney's (together, "Defendants") motion to dismiss Plaintiff Saied Seddegh

18    Kiyaroudi's complaint.  (Mot. (Dkt. # 8); Reply (Dkt. # 10).)  Mr. Kiyaroudi, who is

19    proceeding *pro se*, opposes the motion.  (Resp. (Dkt. # 9).)  The court has considered the

20

21         [1] Pursuant to Federal Rule of Civil Procedure 25(d), U.S. Department of State Secretary
      Marco Rubio is substituted for Antony J. Blinken, and U.S. Department of Homeland Security
22    Secretary Kristi Noem is substituted for Alejandro Mayorkas.

1   parties' submissions, the relevant portions of the record, and the governing law. Being

2   fully advised,[2] the court GRANTS Defendants' motion to dismiss.

3                              **II.    BACKGROUND**

4        This action arises from Defendants' refusal of Mr. Kiyaroudi's application for an

5   E-3 visa. Defendants describe the process for obtaining an E-3 visa as follows:

6        The E-3 visa program was created as a result of the Australia-United States
         Free Trade Agreement. The E-3 visa is similar to the better-known H-1B
7        visa but is limited solely to Australian citizens in "specialty occupations" to
         enter the United States to work for a period of up to two years. 8 U.S.C.
8        § 1101(a)(15)(E)(iii); 20 C.F.R. § 655.700. The applicant's spouse and
         children may receive visas incident to the applicant's status. 22 C.F.R.
9        § 41.51(c)(2). While E-3 visas may be renewed indefinitely, they are
         nonimmigrant visas, meaning the applicant must affirmatively show that they
10       have no intent to establish permanent residency in the United States and will
         depart the end of their visa term. *Id.* § 41.51(c)(1).

11
         To obtain an E-3 nonimmigrant visa, both the sponsoring employer and the
12       applicant must follow a specific procedure. To start, the employer attests to
         the Department of Labor that it has posted notice of the job, is offering the
13       prevailing wage, and that granting the job to an Australian citizen will not
         adversely affect U.S. workers. 20 C.F.R. § 655.700(d)(4); 8 U.S.C.
14       § 1182(t). The employer then files a Form I-129, Petition for a
         Nonimmigrant Worker, for an individual employee with U.S. Citizenship
15       and Immigration Services ("USCIS"). 8 U.S.C. § 1184(c); 20 C.F.R.
         § 655.705. If USCIS approves the Form I-129, the noncitizen E-3 visa
16       applicant completes an Online Nonimmigrant Visa Application (Form
         DS-160) and then is scheduled for an interview at an appropriate U.S.
17       Embassy or Consulate. 22 C.F.R. §§ 41.102, 41.103.

18       At the interview, the noncitizen executes their visa application before a
         consular officer who reviews it and determines the noncitizen beneficiary's
19       eligibility. *See* 8 U.S.C. §§ 1201(a)(1), 1202(c), (d), (h); 22 C.F.R.
         §§ 41.101(a)(1), 41.51(c)(1). As with all visa applications, the noncitizen
20       bears the burden of proof to establish their eligibility to the satisfaction of the
         consular officer. 8 U.S.C. § 1361. Once a visa application has been properly

21

22       _____
         [2] Neither party has requested oral argument, and the court finds that oral argument would
         not assist it in resolving this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 2

executed, the consular officer must either issue the visa or refuse the application. 22 C.F.R. § 41.121(a). The refusal must be "based on legal grounds." *Id.* The possible legal grounds specifically include § 221(g) of the Immigration and Nationality Act ("INA"), which requires consular officers to refuse visas if they "know[ ] or ha[ve] reason to believe that the alien is ineligible to receive a visa." 8 U.S.C. § 1201(g).

Because such a refusal is based on the applicant's failure to demonstrate their eligibility for a requested visa, consular officers often afford noncitizens who have been refused under Section 1201(g) additional discretionary administrative processes, which may generate evidence or conclusions that would cause the officer to reconsider the refusal. *See* 22 C.F.R. § 41.121(c).

(Mot. at 2-3 (footnote omitted).)

After Mr. Kiyaroudi, an Australian citizen, received an offer of employment for a job in Washington State that was originally set to begin on April 29, 2024, he applied for an E-3 visa on behalf of himself, his wife, and two children. (Compl. (Dkt. # 1) at 5.) On April 11, 2024, Mr. Kiyaroudi and his family attended a visa interview at the United States Consulate in Auckland, New Zealand. (*Id.*) The consular officer informed Mr. Kiyaroudi that his visa application had been refused under INA Section 221(g) and would have to undergo additional administrative processing before a visa could be issued. (*Id.*; *see* Resp., Ex. B (screenshot of the Department of State website, showing that the status of Mr. Kiryaroudi's application is "Refused").) Mr. Kiyaroudi has since received three responses from the United States Consulate, most recently in February 2025, informing him that his case was still undergoing administrative processing. (Resp., Ex. C.)

Mr. Kiyaroudi filed this action on January 14, 2025. (Compl. at 1.) He asserts that the delay in processing his visa applications has "significantly disrupted the U.S. employer's operational plans[,]" "strained the relationship with the U.S. employer, raised

ORDER - 3

1    concerns about the potential reconsideration of [his] employment status, and risked the

2    loss of the employment opportunity[,]" "disrupted [his] professional plans[,]" "caused

3    [him] significant financial hardship[,]" and "left [him and his] family in a state of

4    uncertainty[.]" (*Id.* at 5-7.)  He alleges that the U.S. Consulate's actions violate the INA,

5    the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, and the Due Process

6    Clause of the Fifth Amendment to the Unites States Constitution.  (*Id.* at 3.)  He seeks

7    expedited processing of his visa application.  (*Id.* at 7.)

8         Defendants now move to dismiss Mr. Kiyaroudi's complaint under Federal Rules

9    of Civil Procedure 12(b)(3) and 12(b)(6).  (*See generally* MTD.)  The motion is fully

10   briefed and ripe for decision.

### III.    ANALYSIS

12        Defendants assert that dismissal is warranted because venue is not appropriate in

13   this District and even if venue were proper, Mr. Kiyaroudi has failed to state a claim.

14   (*See id.* at 1-2.)  The court first considers venue whether venue is proper, then considers

15   whether Mr. Kiyaroudi has plausibly alleged a claim for relief.

16   **A.    Venue**

17        Federal Rule of Civil Procedure 12(b)(3) allows for dismissal of a complaint for

18   improper venue.  The plaintiff bears the burden of demonstrating venue is proper.  *See*

19   *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

20   When considering whether venue is proper, "the pleadings need not be accepted as true,

21   and the court may consider facts outside of the pleadings."  *Murphy v. Schneider Nat'l,*

22   *Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (internal citations omitted).  Where, as here, the

1    defendant is a federal officer or employee, venue is proper "in any judicial district in

2    which (A) a defendant in the action resides, (B) a substantial part of the events or

3    omissions giving rise to the claim occurred, or a substantial part of property that is the

4    subject of the action is situated, or (C) the plaintiff resides if no real property is involved

5    in the action." 28 U.S.C. § 1391(e)(1). If venue is improper, the court must either

6    dismiss the case or, if it is in the interest of justice, transfer the case to a distrct where it

7    could have been brought. 28 U.S.C. § 1406(a).

8         Defendants argue that venue is improper in this District because none of the three

9    options for venue under 28 U.S.C. § 1391(e)(1) apply in this case. (Mot. at 5-7.) The

10   court agrees. First, none of the Defendants reside in the Western District of Washington.

11   Rather, all of the Defendants reside in either Washington, D.C., or Auckland, New

12   Zealand. (*See* Compl. at 2.) Second, Mr. Kiyaroudi cannot show that a "substantial part

13   of the events or omissions giving rise to the claim occurred" in the Western District of

14   Washington. Instead, the relevant conduct occurred in Auckland, New Zealand, where he

15   applied for his visa, underwent an interview, and received notice that his application had

16   been refused and required administrative processing. (*See id.* at 5.) Finally, Mr.

17   Kiyaroudi does not reside in the Western District of Washington and real property is not

18   at issue in this action. Courts in the Ninth Circuit have applied a rebuttable presmption

19   that, for the purpose of determining whether venue is proper, a noncitizen does not reside

20   in any judicial district in the United States. *See Gu v. Napolitano*, No. C 09-2179 PVT,

21   2009 WL 2969460, at *2 (N.D. Cal. Sept. 11, 2009) (citations omitted). Although Mr.

22   Kiyaroudi provides an address in Bellevue, Washington, where he hopes to reside after

1    his visa is granted (*see* Compl. at 1), he does not dispute that he is "currently outside the

2    United States" (Resp. at 1).

3           Because Mr. Kiyaroudi has failed to demonstrate that venue is proper in the

4    Western District of Washington, the court must either dismiss this action or, if it is in the

5    interest of justice, transfer it to the District of the District of Columbia, where both parties

6    agree venue would be appropriate.  28 U.S.C. § 1406(a); (*see* Mot. at 6; Resp. at 2).

7    Therefore, the court must consider whether Mr. Kiyaroudi has stated a claim for relief.

8    **B.     Failure to State a Claim**

9           Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint

10   "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see*

11   *also* Fed. R. Civ. P. 8(a)(2) (requiring the plaintiff to provide "a short and plain statement

12   of the claim showing that the pleader is entitled to relief").  The complaint "must contain

13   sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

14   face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

15   550 U.S. 544, 556 (2007)).  "A claim has facial plausibility when the plaintiff pleads

16   factual content that allows the court to draw the reasonable inference that the defendant is

17   liable for the misconduct alleged."  *Id.*  In reviewing the plausibility of a complaint, the

18   court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings

19   in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine*

20   *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Because Mr. Kiyaroudi is proceeding *pro*

21   *se*, the court must construe his pleadings liberally.  *See McGuckin v. Smith*, 974 F.2d

22

1    1050, 1055 (9th Cir. 1992).

2       Defendants assert—and Mr. Kiyaroudi does not dispute—that Mr. Kiyaroudi's

3    "sole cognizable claim" arises under the APA.  (Mot. at 7; *see generally* Resp. (arguing

4    only that Mr. Kiyaroudi has stated a valid claim under the APA).)  Under the APA, an

5    administrative agency must adjudicate "a matter presented to it" within a "reasonable

6    time." 5 U.S.C. § 555(b).  Where an agency fails to do so, the "reviewing court shall

7    compel agency action unlawfully or unreasonably delayed."  5 U.S.C. § 706(1).  "A court

8    can compel agency action under [5 U.S.C. § 706(1)] only if there is 'a specific,

9    unequivocal command' placed on the agency to take a 'discrete agency action,' and the

10   agency has failed to take that action."  *Vietnam Veterans of Am. v. Cent. Intelligence*

11   *Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness All.*,

12   542 U.S. 55, 63-64 (2004)).  The "agency action must be pursuant to a legal obligation so

13   clearly set forth that it could traditionally have been enforced through a writ of

14   mandamus."  *Id.* at 1075-76 (quoting *Hells Canyon Pres. Council v. U.S. Forest Serv.*,

15   593 F.3d 923, 932 (9th Cir. 2010)).

16      Defendants assert that Mr. Kiyaroudi cannot state a claim for relief under the APA

17   because Mr. Kiyaroudi has failed to identify a mandatory, nondiscretionary duty

18   requiring Defendants to readjudicate his refused E-3 nonimmigrant visa application after

19   it was initially refused.  The court agrees that Mr. Kiyaroudi has not identified a

20   mandatory, nondiscretionary duty that Defendants failed to perform.

21      Under 22 C.F.R. § 41.121(a), "[w]hen a visa application has been properly

22   completed and executed in accordance with the provisions of the INA and the

ORDER - 7

implementing regulations, the consular officer must issue the visa [or] refuse the visa[.]" 22 C.F.R. § 41.121(a). Here, Mr. Kiyaroudi acknowledges that the consular officer in Auckland refused his visa pursuant to § 221(g) of the INA, which requires refusal if the officer "knows or has reason to believe that the alien is ineligible to receive a visa[.]" 8 U.S.C. § 1201(g); (*see* Compl. at 5; Resp. at 1). Thus, there is no dispute that Defendants performed their mandatory duty to issue or refuse Mr. Kiyaroud's visa under the INA. Although Mr. Kiyaroudi insists that the fact that his application remains in administrative processing means that Defendants have not performed their duty to adjudicate his application, he directs the court to no statutory or regulatory provision that sets forth a mandatory, nondiscretionary duty to readjudicate a refused application. (*See generally* Resp.) The court concludes that Mr. Kiyaroudi has failed to state a claim for relief under the APA[3] and, as a result, transfer to the District of the District of Columbia would not be in the interest of justice under 28 U.S.C. § 1406(a). Therefore, the court grants Defendants' motion to dismiss.

## C.    Leave to Amend

Mr. Kiyaroudi asks the court to grant him leave to amend his complaint. (Resp. at 2.) In general, under Federal Rule of Civil Procedure 15(a), district courts must "freely give" leave to amend a claim subject to dismissal. Fed. R. Civ. P. 15(a)(2). Leave to

---

[3] Defendants also argue that Mr. Kiyaroudi fails to state a claim because he cannot show that a one-year delay in readjudicating his application is unreasonable as a matter of law. Because the court concludes that Mr. Kiyaroudi has failed to identify a mandatory, nondiscretionary duty that Defendants failed to perform, it need not address Defendants' unreasonable delay argument.

1    amend is not required, however, where amendment would be futile, such as when the

2    pleading could not possibly be cured by further factual allegations. *Foman v. Davis*, 371

3    U.S. 178, 182 (1962); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 968 (9th Cir. 2016). The court

4    concludes that amendment would be futile because the actions Mr. Kiyaroudi seeks to

5    compel are neither mandatory nor nondiscretionary as a matter of law. Therefore, the

6    court denies Mr. Kiyaroudi's request for leave to amend.

7                    **IV.    CONCLUSION**

8        For the foregoing reasons, the court GRANTS Defendants' motion to dismiss

9    (Dkt. # 8). The court DISMISSES Mr. Kiyaroudi's complaint, and this action, with

10    prejudice.

11        Dated this 19th day of May, 2025.

12

13

14    JAMES L. ROBART
      United States District Judge

15

16

17

18

19

20

21

22

ORDER - 9